UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JANCIS FULLER                    :          CIVIL NO. 3:00CV812 (RNC)(DFM)

    v.                           :

JOHN ARMSTRONG, ET AL.           :          AUGUST 2, 2004

<u>**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**</u>

**I.     <u>INTRODUCTION</u>**

Plaintiff is a sentenced prisoner confined to the custody of the Commissioner of

Correction pursuant to the following:

> Mittimus issued on June 4, 1997, in Docket No. CR95-226195 by
> the New London Superior Court, sentencing plaintiff to a total
> effective sentence of 30 years, 5 years probation, for violation of
> Conn. Gen. Stat. §§ 53a-49, 53a-59 and 29-35(a).  <u>See</u> Ex. 1,
> Judgment Mittimus.

Plaintiff has filed this 42 U.S.C. § 1983 action alleging that the defendants have been

deliberately indifferent to her serious medical need in that they will not provide her with a crown

on her tooth or, more specifically, allow her to visit with her outside Dentist and obtain a crown

at her own expense.

The defendants assert that plaintiff has failed to state a claim upon which relief can be

granted.

**II.    <u>PROCEDURAL HISTORY</u>**

The defendants originally filed a Motion for Summary Judgment on or about June 3,

2002.  That Motion was denied.  Thereafter, the defendants retained Dr. Jonathan Meiers, DDS

as their dental expert.  Dr. Meiers performed a dental examination of the plaintiff and issued a report.

To the best of the undersigned's knowledge, plaintiff has not retained a dental expert even though the defendants agreed to allow plaintiff's dental expert to conduct an examination of the plaintiff at York Correctional Institution.

Following a telephone status call in June 2004, the defendants were given another opportunity to file a Motion for Summary Judgment.  As stated in the accompanying Motion, the undersigned has resubmitted many of the same arguments and exhibits as were submitted in the prior Motion for Summary Judgment dated June 3, 2002 and Reply dated July 29, 2002, rather than incorporating same by reference only.  The intention of this practice was to present one cohesive document package to the Court and plaintiff.

**III.        <u>RELATED PROCEDURAL HISTORY</u>**

By way of a <u>pro se</u> petition dated March 29, 1999, plaintiff filed a petition for writ of habeas corpus in New London Superior Court.  That matter entitled, <u>Jancis Fuller v. Warden</u>, Docket No. CV99-550498, was tried before the Honorable Judge Stuart M. Schimelman on November 5, 1999 and December 9, 1999.  There, plaintiff sought to have a dental examination performed by Dr. Smiley of Mystic, Connecticut, at his private office, for the purpose of a crown placement.  (Ex. 13, Transcript, Dec. 9, 1999; Ex. 14, Partial Transcript, Nov. 18, 1999).

Plaintiff withdrew her petition just prior to the close of trial after she learned that Dr. Smiley's Motion to Quash a subpoena issued by the plaintiff, requesting an examination at the courthouse itself, had been granted.

As such, the petition was dismissed.

**IV.** **ARGUMENT**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any fact and that the party is entitled to judgment as a matter of law." A principle purpose of a summary judgment motion under Rule 56, Fed.R.Civ.P. is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The party seeking summary judgment always has the initial responsibility of informing the Court of the basis for its motion of identifying those materials which he believes demonstrates the absence of a genuine issue of material fact. Celotex, at 106 S.Ct. 2553.

When the moving party meets its burden and demonstrates the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to affirmatively set forth facts showing that there is indeed a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. The nonmoving party cannot, however, oppose a properly made motion by reference only to its own pleadings. Celotex, at 106 S.Ct. 2554. Rather, the nonmoving party must, by affidavit or otherwise, set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. If the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against him. Id.

A "genuine issue" sufficient to preclude summary judgment is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. Keystone Retaining Wall Systems, Inc. v. Westrock, Inc., 997 F.2d 1444, 1449 (Fed. Cir. 1993), citing Avia Group Int'l., Inc. v. L.A. Gear Cal., Inc., 853 F.2d 1557.

Further, a fact is "material" for the purposes of summary judgment only if its resolution will affect the outcome of the lawsuit.  United Steel Workers of America, AFL-CIO, CLC v. United Engineering, Inc., 839 F.Supp. 1279, 1282 (N.D. Ohio 1993), citing Anderson, at 106 S.Ct. 2510.  Otherwise, the mere existence of some alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment.  Rosa v. Gaynor, 784 F.Supp. 1, 3 (D.Conn. 1989).

The nonmoving party cannot rely upon mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.  Id.  Likewise, mere conclusory allegations and denials in legal memoranda are not evidence and cannot, by themselves, create a genuine issue of material fact where none would otherwise exist.  Id.  When appropriate, a Court should not be reluctant to grant summary judgment.  Witter v. Abell-Howe Co., 765 F.Supp. 1144, 1147 (W.D.N.Y. 1991).

In this case, the defendants raise the defense of qualified immunity as to the action the plaintiff brings pursuant to 42 U.S.C. § 1983.  The defense of qualified immunity is a well-settled doctrine that protects government officials from civil suits arising from the performance of their discretionary functions when that performance "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Immunity ordinarily should be decided by the court.  Id., 23 F.3d at 649, quoting Hunter v. Bryant, 502 U.S. 224 (1989).  In fact, the Supreme Court has expressly encouraged the use of summary judgment when qualified immunity is raised as a defense.  Carter v. Lussier, 955 F.2d 841, 844 (2nd Cir. 1992).  The "objective reasonableness"

test was designed to facilitate this summary device as a means to quickly extricate government officials from defending insubstantial suits.  Harlow, at 815-16.

With regard to qualified immunity, a defendant is entitled to summary judgment if it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act.  Anderson v. Creighton, 483 U.S. 635, 641 (1987).  "Although reasonableness is ordinarily a question of fact for the jury, this rule does not hold true when evaluating the affirmative defense of qualified immunity ….  Provided that there are no material issues of fact, the question of whether a reasonable officer should have known that he or she acted unlawfully is a question for the Court and not the jury, and is properly resolved on a Motion for Summary Judgment."  Pena v. Recore, 1999 U.S. Dist. LEXIS 16329, October 21, 1999, citing, Hunter v. Bryant, 502 U.S. 224, 227-28 (1991); Tierney v. Davidson, 133 F.3d 189, 194 (2d Cir. 1998).  Qualified immunity protects governmental officials from civil liability in the performance of discretionary functions so long as their actions do not violate clearly established statutory or constitutional rights which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity "gives officers ample room for mistaken judgments." Malley v. Briggs, 475 U.S. 335, 343 (1986).

The Supreme Court has directed that before evaluating a qualified immunity defense under § 1983, the Court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all."  Wilson v. Layne, 526 U.S. 603, 609 (1999).  See also, Charles W. v. Maul, 214 F.3d 350, 357 (2nd Cir. 2000).  Thus, the legal analysis included herein considers, first, the lack of liability on the part of the defendants and, second, their entitlement to qualified immunity under these circumstances.

For the following reasons, summary judgment for the defendants is appropriate and warranted in this matter.

A. **The Claims Against The Defendants For Money Damages In Their Official Capacities Are Barred By The Eleventh Amendment To The United States Constitution**

The plaintiff has brought this action against the following employees of the State of Connecticut, Department of Correction:

> a.      Commissioner John Armstrong
> b.      Warden Eileen Higgins
> c.      Dr. Paul Benard
> d.      Dr. Steven Hinchey

To the extent plaintiff has actually made allegations against each of these individuals, the allegations relate to actions or inactions taken by the defendants during the course of their employment with the State of Connecticut, Department of Correction and while acting in their official capacities.

The Eleventh Amendment to the United States Constitution protects state officials and employees sued for money damages in their official capacities.  Minotti v. Lensink, 798 F.2d 607, 609 (2d Cir. 1986).  A state may waive its eleventh amendment immunity as long as that waiver is unequivocally expressed.  Id.  In the absence of such a waiver, a suit generally may not be maintained directly against the state.  Florida Department of State v. Treasure Salvors, Inc., 458 U.S. 670, 684, 102 S.Ct. 3304, 3315, 73 L.Ed.2d 1057 (1982).  The state need not be a nominal party to be the real party in interest.  In Re Baldwin v. United Corp., 770 F.2d 328, 340 (2d Cir. 1985).  The state is usually the real party in interest when satisfaction of a judgment in a suit for damages would require payment from the state treasury.  Fay v. South Colonie School

District, 802 F.2d 21, 27 (2d Cir. 1986).  Plaintiff here is suing each of these defendants for money damages.

Accordingly, insofar as this is a claim for money damages against these defendants in their official capacities, this matter must be dismissed and judgment should enter on their behalf.

### B.    Defendants Warden Higgins And Dr. Hinchey Were Not Personally Involved With The Action Alleged In The Complaint

Plaintiff has alleged as her cause of action, that the defendants have been deliberately indifferent to her serious medical needs in that they will not provide her with a crown for her tooth or allow her to visit her private dentist.

Personal involvement of the defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under 42 U.S.C. § 1983.  McKinnon v. Patterson, 568 F.2d 930, 934 ([2d] Cir. 1977), cert. denied, 434 U.S. 1087 (1978).  To allege personal involvement, a plaintiff must also allege a tangible connection between the acts of a defendant and the injuries suffered.  Bass v. Jackson, 790 F.2d 260, 263 ([2d] Cir. 1986).  A defendant may be personally involved in a constitutional deprivation within the meaning of 42 U.S.C. § 1983, when he has directly participated in the infraction.  Williams v. Smith, 781 F.2d 319, 323 ([2d] Cir. 1986).  As Warden of York Correctional Institution, defendant Higgins was not personally involved with any of the incidents alleged to have taken place involving plaintiff's dental care.  Defendant Higgins is a Warden and holds a supervisory position over custody staff.  She, however, does not hold a supervisory position over medical staff.  See Ex. 10, Affidavit of Kenneth Parker.

As stated in Ex. 10, the facility Warden has no supervision of or control over the medical prison staff.  Prison medical staff are employed by or contracted with the UCHC, CMHC.  Thus,

defendant Higgins had no control over or involvement with the medical decisions made relative to the dental treatment afforded to the plaintiff.

The plaintiff's attempts to hold the Warden responsible in this action for her alleged refusal to allow the plaintiff to visit with her personal dentist, must fail as well. Department of Correction policy does not allow prisoners to be transported to their private doctors' offices any more than they are allowed to be transported outside of the facility to visit friends, relatives or other businesses. See Ex. 14, Transcript of Lieutenant Sorenson testimony, at pp. 50-53, 55-56. As stated further by Lieutenant Sorenson, there are legitimate security reasons for this policy such as the high risk of escape and of obtaining contraband items. See Ex. 14, pp. 51-53. As stated, defendant Higgins does retain a supervisory position over custody staff. A defendant who occupies a supervisory position may be personally involved in the deprivation of a plaintiff's constitutionally protected liberty interests in several ways:

1.  A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong;

2.  A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred or allow such a policy or custom to continue.

3.  A supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event.

Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994), citing Williams, at 781 F.2d 323-24. In addition, supervisory liability may be imposed where an official demonstrates "gross negligence" or "deliberate indifference" to the constitutional rights of inmates by failing to act on information indicating that unconstitutional practices are taking place. Wright, at 501.

Plaintiff has made no allegations that Warden Higgins created an unconstitutional policy or custom or that she knew of a constitutional violation relative to plaintiff's medical needs.

In addition, as stated by Dr. Hinchey in his Affidavit (Ex. 7) and as evidenced by the plaintiff's dental records, although Dr. Hinchey is a Dentist currently assigned to York Correctional Institution, he never examined or treated the plaintiff personally.

As such, this action as it is against defendant Higgins and defendant Hinchey must fail.

**C.    The Treatment Afforded The Plaintiff Complied With The Eighth Amendment Standard**

Under the Eighth Amendment, sentenced inmates are entitled only to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2nd Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520 (1979); Lareau v. Manson, 651 F.2d 96, 106 (2nd Cir. 1981); see also, Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (Supreme Court noted that Eighth Amendment imposed certain duties on prison officials, to "ensure that inmates receive adequate food, clothing, shelter and medical care"), quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981) (Court held that only those conditions depriving inmates of the "minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.").

In order to state a cause of action for unconstitutional denial of medical care, an inmate must allege deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 291 (1976). "A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Id., at 292. The conduct complained of must "shock the conscience" or

constitute a "barbarous act".  McCloud v. Delaney, 677 F.Supp. 202, 232 (S.D.N.Y. 1988), citing U.S. ex rel. Hyde v. McGinnis, 429 F.2d 864 (2nd Cir. 1970).  A claim by an inmate against a treating physician is only cognizable if the alleged conduct is "repugnant to the conscience of mankind."  Tomarkin v. Ward, 534 F.Supp. 1224, 1230 (S.D.N.Y. 1982), quoting Estelle, supra, 97 S.Ct. at 292.  A defendant must have acted with a "sufficiently culpable state of mind."  Hathaway v. Coughlin, 37 F.3d 63, 66 (2nd Cir. 1994).  "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmates health or safety; the official must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exist, and he must also draw the inference.'"  Id., quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994).

There are both subjective and objective components to the deliberate indifference standard.  Hathaway v. Coughlin, 37 F.3d 63, 66 (2nd Cir. 1994), cert. denied sub nom, Foote v. Hathaway, 513 U.S. 1154 (1995).  The alleged deprivation must be "sufficiently serious" in objective terms.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The term "serious medical need" contemplates a "condition of urgency, one that may produce death, degeneration, or extreme pain."  Hathaway, supra, 37 F.3d at 66, quoting Nance v. Kelley, 912 F.2d 605, 607 (2nd Cir. 1990) (Pratt, J., dissenting).  Examples of such urgency include the following:  broken pins in a hip, Hathaway v. Coughlin, 841 F.2d 48 (2nd Cir. 1988); discarding an inmate's ear rather than reattaching it, Williams v. Vincent, 508 F.2d 541, 544 (2nd Cir. 1974); and refusal to follow the surgeon's instructions.  Martinez v. Mancusi, 443 F.2d 921, 923 (2nd Cir. 1970), cert. denied, 401 U.S. 983 (1971).  Not all medical conditions, however, are considered "serious."  See, e.g., Jones v. Lewis, 874 F.2d 1125 (6th Cir. 1989) (mild concussion and broken jaw); Hutchinson v. U.S.,

838 F.2d 390 (9th Cir. 1988) (kidney stone); Malsh v. Austin, 901 F.Supp. 757 (S.D.N.Y. 1995)

(delay in providing routine dental treatment; May v. Baldwin, 895 F.Supp. 1398 (D.Or. 1995)

(dry skin); Glasper v. Wilson, 550 F.Supp. 12 (W.D.N.Y. 1982) (bowel problems).

Subjectively, the prison official must have acted with "a sufficiently culpable state of mind." Hathaway v. Coughlin, supra, 37 F.3d at 66. "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate's health or safety; the official must both be aware of fact from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id., quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994).

A mere disagreement over the proper treatment for the prisoner does not create a constitutional claim. As long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation. Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). A prisoner's right is to medical care – not the type or scope of medical care which he personally desires. A mere difference of opinion between a physician and patient does not give rise to a constitutional claim under § 1983. United States ex rel Hyde v. McGinnis, 429 F.2d 864, 867 (2d Cir. 1970). A prisoner does not have a right to the medical treatment of their choice. Jackson v. Fair, 846 F.2d 811, 817-18 (1st Cir. 1988); Ross v. Kelly, 784 F.Supp. 35, 44-45 (W.D.N.Y. 1992).

Here, plaintiff alleges that she needs a crown and wants the crown done by her outside dentist – or an outside dentist of her choosing – and not by the prison dentist. Plaintiff has not alleged that the defendants failed to offer or provide her with dental care. She alleged only that she has not been offered or provided with the dental care of her choosing. As such, plaintiff has

presented no facts or evidence even suggesting that first, she suffers from a serious medical need and that, second, the defendants have been deliberately indifferent to that serious need.

As set forth by Ex. 12 (plaintiff's dental records), Ex. 7 (Affidavit of Dr. Steven Hinchey) and Ex. 2 (Corrected Affidavit of Dr. Paul Benard), plaintiff presented herself to the prison dental department on or about March 26, 1999, with a complaint of a broken tooth.  She stated that she wanted a crown, that she wanted the crown done by a private dentist and not by the prison dentist and that she wanted Dr. Benard to document that she indeed suffered from a broken tooth.  Plaintiff did not complain of sensitivity in the tooth, pain or discomfort, and she did not complain that her dental problem rendered her unable to eat, speak or sleep.

Following his examination, Dr. Benard noted that plaintiff had a broken cusp on her left maxillary molar.  This is a back tooth.  A cusp is one of the pointed tips of a molar tooth.  Dr. Benard stated that the plaintiff did not appear to be in any pain nor did she have trouble speaking.  Dr. Benard offered to place a restoration (filling) on the tooth.  Plaintiff refused this treatment.  In fact, plaintiff refused any treatment stating that she wanted a crown and wanted the crown to be done by a private dentist.  Plaintiff stated emphatically that she did not want the crown done by a prison dentist.  In effect, plaintiff has refused treatment by CMHC medical staff.

On May 1, 2003, Dr. Jonathan Meiers, a licensed dentist retained by the defendants, examined plaintiff's teeth, with specific focus on the maxillary left first molar (Ex. 9, Report of Dr. Jonathan C. Meiers Concerning Jancis Fuller).  Dr. Meiers opined in his report that the plaintiff had a fractured disto-lingual cusp of the tooth with no signs of decay or pulp exposure.

He noted that the plaintiff was able to speak well and did not appear to have tooth sensitivity or to be in pain.

Dr. Meiers opined that the tooth in question could be appropriately restored with one of 2 options.  The first option would be an amalgam restoration using either a pin or slot in the location of the disto-lingual cusp to help hold that section of the amalgam to the tooth.  Another method to help retain the amalgam is to use a bonded amalgam technique where an adhesive liner is used to bond the amalgam to the tooth structure.  Dr. Meiers believed that the bonded amalgam was the more conservative method and has had a high rate of success.  He preferred this method as it did not require the removal of any more tooth structure than what was already lost.  The second option was a crown.  Dr. Meiers stated that this method required the removal of much more tooth which would stress the pulp tissue to a greater degree and could contribute much more to a degenerative  pulp condition requiring further treatment.

In his affidavit (Ex. 9), Dr. Meiers stated that plaintiff did not, on the date of his examination, present a serious medical need insofar as the tooth was concerned.  He stated in his affidavit that if the composite or amalgam restoration failed and the tooth loss was significant enough, the extraction of the tooth would be a dentally acceptable alternative to a crown. Finally, Dr. Meiers stated in his affidavit that the extraction of the tooth would not prevent the plaintiff from speaking or masticating her food.  The extraction itself would not present a serious medical need.

As stated in their Affidavits, Dr. Hinchey, Dr. Benard and Dr. Meiers believe that plaintiff's broken tooth does not present a serious medical need.  The three doctors also believe that medically reasonable alternatives to a crown exist.  Doctors Hinchey and Benard were

dentists qualified to perform this work on the plaintiff. Plaintiff simply refused treatment. Dr. Albert Toro, the Dental Services Coordinator for Correctional Managed Health Care (CMHC), has stated in his affidavit (Ex. 11), that CMHC has dentists qualified to perform the bonded amalgam technique, a pin/slot amalgam restoration or a composite, at the prison facilities.

Dr. Monica Farinella, a physician at York Correctional Institution has provided an affidavit stating that she has reviewed plaintiff's Department of Correction medical chart (Ex. 5). Dr. Farinella states that there is no indication in this chart that plaintiff has sought treatment for mouth pain or infection. Likewise, there is no indication that plaintiff is suffering nutritionally from an inability to eat or drink. This, too, is suggestive of the fact that plaintiff's dental condition does not present a serious medical need.

Evidence that prison officials did provide some medical care generally defeats a claim of deliberate indifference. Wells v. Franzen, 777 F.2d 1258, 1264 (7th Cir. 1985). "[T]he Constitution is not a medical code that mandates specific medical treatment." Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997), citing Snipes v. DeTella, 95 F.3d 586 (7th Cir. 1996), cert. denied, ___ U.S. ___, 117 S.Ct. 980, 136 L.Ed.2d 863. The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves." Ross v. Kelly, 784 F.Supp. 35, 45 (W.D.N.Y. 1992), quoting, Ruiz v. Estelle, 679 F.2d 1115, 1149 (5th Cir.), vacated in part as moot, 688 F.2d 266 (5th Cir. 1982), cert. denied, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983). Plaintiff was offered appropriate and adequate dental treatment. She refused that treatment and opted instead for a treatment not allowed by prison officials, that is, a crown done by a private dentist of her choosing. Taken in conjunction with the additional facts of the case, a prisoner's refusal of medical treatment could, in certain

instances, preclude recovery under a claim of deliberate indifference.  Hernandez v. Keane, 341 F.3d 137, 147 (2d Cir. 2003).  Here, plaintiff not only refused attempts to fill her tooth, but has refused and/or failed to seek any dental care from the dental staff at York Correctional Institution since 1999.

The defendants have stated that they do not allow inmates to visit their private doctors, whether at the State's expense or their own expense.  In her earlier Opposition to Defendants' First Motion for Summary Judgment, plaintiff provided the affidavits of two prisoners.  One prisoner stated that she was brought to Flanders Health Center during the Fall of 2000 for a mammography and another stated that in 1995 she was brought to an orthopedist's office in Farmington, Connecticut.

Medical treatment is available and provided to prisoners at the medical unit of the prison facility where the inmate is housed.  If a prisoner requires medical treatment not available within the prison facilities, the prisoner can be brought to the University of Connecticut Health Center for treatment.  Occasionally, the Department of Correction will contract with outside medical facilities to provide medical care to prisoners.  See Ex. 3, Affidavit of Dr. Edward Blanchette.

For example, during the Fall of 2001, a contract was in place between the Department of Correction and Lawrence & Memorial Hospital in New London to provide mammography services to the female prisoners at York Correctional Institution.  The services were provided at the Flanders Health Center.  The contract was put in place as mammography services could not be provided at the prison facility itself and it was deemed more efficient to bring prisoners from York Correctional Institution to Flanders Health Center in Old Lyme than to transport them to UConn in Farmington, Connecticut.

Also, in 1995, prior to the Department of Correction's contract with UConn, there were limited orthopedic services available at York Correctional Institution. Certain services, such as long leg x-rays and hip x-rays were performed by either an acute care facility or by an orthopedist under contract with the Department of Correction. See Ex. 3, Affidavit of Edward Blanchette.

Prisoners are not permitted to visit with their personal outside medical providers. The Department provides medical treatment within its facilities and through UConn Health Center. When necessary, the Department of Correction will contract with an outside provider to provide medical services to prisoners as needed in the judgment of facility medical staff. This is not the same thing as allowing prisoners to visit their outside medical provider and plaintiff's attempt to equate the two is misleading.

Plaintiff has argued that she should be provided a medical furlough to visit her private dentist. The defendants disagree.

Conn. Gen. Stat. § 18-101a provides

> Sec. 18-101a. Furloughs for prisoners. Crime of escape. The Commissioner of Correction at his discretion may extend the limits of the place of confinement of a prisoner as to whom there is reasonable belief he will honor his trust, by authorizing him under prescribed conditions to visit a specifically designated place or places, within or without the state, for periods not exceeding fifteen days and return to the same or another institution or facility. Such periods may be renewed at the discretion of the commissioner. Such furlough may be granted only to permit a visit to a dying relative, attendance at the funeral of a relative, the obtaining of medical services not otherwise available, the contacting of prospective employers, or for any compelling reason consistent with rehabilitation. Any inmate who fails to return from furlough as provided in the furlough agreement shall be guilty of the crime of escape in the first degree. (Emphasis added).

This statute gives the Commissioner of Correction the <u>discretion</u> to grant or deny furlough requests. As such, a prisoner has no legitimate statutory or constitutional entitlement to a furlough. <u>See</u> <u>Meachum v. Fano</u>, 427 U.S. 215, 96 S.Ct. 2532, 59 L.Ed.2d 451 (1976) (no constitutional right to prisoner transfer); and <u>Moody v. Daggett</u>, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 336 (1976) (no constitutional right to classification). To qualify as a constitutionally protected liberty interest, a prisoner's interest must be either one that is assured by statute, judicial decree or regulation, or one that he would normally expect to have as a matter of fundamental decency and fairness. <u>Pugliese v. Nelson</u>, 617 F.2d 916, 922 (2d Cir.) 1980. The <u>Pugliese</u> court noted that a prisoner's interest in a furlough represents a "mere possibility," <u>id.</u> at 923 and, as such, does not amount to a constitutional entitlement. <u>Id.</u> at 925-926. <u>See also</u>, <u>Gilliam v. Quinlan</u>, 608 F.Supp. 823, 832-34 (S.D.N.Y. 1985); <u>Smith v. Saxbe</u>, 562 F.2d 729, 734 (D.C. Cir. 1977); <u>Bowser v. Vose</u>, 968 F.2d 105 (1st Cir. 1992). Historically, the Connecticut District Courts have held that a prisoner has no entitlement to a furlough. <u>See</u> Exh. 16, <u>Robert Fredericks v. John Manson</u>, Civil No. H-78-490; Exh. 17, <u>Thomas Patrick Lally v. John Manson</u>, Civil No. H-77-12.

Qualified immunity shields government officials from liability in their individual capacity if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Plaintiff claims that the defendants are not entitled to qualified immunity based upon their refusal to approve a medical furlough. Plaintiff has no constitutionally protected right to a furlough and, as such, the defendants cannot be faulted for denying same, if a denial actually occurred.

There exists no evidence to suggest that plaintiff actually requested a medical furlough from the defendants prior to the filing of this action.  <u>See</u> Exh. 4, Affidavit of Major Lora Castronova; and Exh. 6, Affidavit of Warden Eileen Higgins.  In fact, plaintiff does not even allege in her complaint that she even applied for a furlough, therein stating only that she sought a furlough as part of her request for relief.

Plaintiff has no constitutional entitlement to a furlough and cannot prevail on this claim.

The Eighth Amendment does not confer upon a  prisoner the right to substitute his own judgment for that of a medical care provider nor does the Eighth Amendment allow a prisoner to make the choices concerning his medical care that are available to the general public.

The facts here show unequivocally that the plaintiff was offered appropriate dental care. Plaintiff disagreed with the care offered and instead insisted upon a crown being done by an outside dentist.  Plaintiff has since refused dental treatment by the CMHC dental staff.

It would appear that the only individual being indifferent to plaintiff's dental needs is the plaintiff herself.

Plaintiff has failed to state a claim against the defendants in this regard and, as such, the defendants are entitled to judgment.

**D.**     **<u>Plaintiff Has Failed To Allege That She Has Exhausted Her Administrative Remedies Prior To Bringing This Action</u>**

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321-73 (1996), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until … administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (emphasis added).  The intended purpose of the PLRA was to

limit frivolous prisoner suits, which comprise a disproportionate percentage of all cases filed in the District Court of the United States.  See 141 Conn. Rec. § 7498-01, 7526 (daily ed. May  25, 1995) (comments of Senator Kyle).

The Connecticut Department of Correction provides an administrative procedure under which prisoners may seek redress of grievances.  Plaintiff's claim that she was unable to receive dental treatment and was unable to visit with her private dentist may be raised in the administrative setting.  The plaintiff has not alleged that she resolved these issues by way of the grievance procedure.  In fact, plaintiff claims that she only reached Level One of the Grievance process as "someone kept throwing her grievances away".

The grievance procedure within the Department of Correction provides for 3 levels of grievances.  It provides further that if a prisoner does not receive a response to his grievance, the lack of response can be deemed a denial and the prisoner should proceed to the next step.

Plaintiff is not relieved from the administrative exhaustion requirement because she seeks money damages, which are not available to her in the grievance context.  In 1996, Congress amended the PLRA to require exhaustion of all "available" remedies, removing language previously requiring exhaustion only of "plain, speedy and effective" administrative remedies. See 42 U.S.C. § 1997e, as amended by Pub.L.No. 104-134, § 803(d), 110 Stat. 1321-71. Exempting from the exhaustion requirement those cases in which the inmate plaintiff seeks monetary relief would invalidate Congress' 1996 amendment, reinserting the very same effectiveness inquiry Congress removed.  Booth v. Churner, 121 S.Ct. 1819 (2001).  "The most natural reading of the [post-Amendment PLRA] leads to the conclusion that Congress was not asking courts to evaluate the sufficiency of the administrative remedies, whether the grievance

procedure will produce the precise remedy that the prisoner wants or some other remedy"; <u>see also</u>, <u>Beeson v. Fishkill Correctional Fac.</u>, 28 F.Supp.2d 884, 893 (S.D.N.Y. 1998).

On February 26, 2002, the United States Supreme Court issued its decision in <u>Porter, et al. v. Nussle</u>, No. 00-853, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).  The Supreme Court reversed and remanded the Second Circuit Court of Appeals and held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  122 S.Ct. at 992.  The <u>Nussle</u> court noted that the exhaustion requirement of the PLRA makes exhaustion mandatory … that all "available" remedies must now be exhausted; that these remedies need not meet federal standards, nor must they be plain, speedy and effective … even when the prisoner seeks relief not available in grievance proceedings, notably money damages exhaustion is a prerequisite to suit.  <u>Nussle</u>, 122 S.Ct. at 988.

Other District Courts within the Second Circuit have had opportunity to rule on this issue since <u>Nussle</u>.  In <u>Mendez v. Artuz, et al.</u>, 2002 U.S. LEXIS 3263 (Feb. 26, 2002), the United States District Court for the Southern District of New York considered the matter of a prisoner who had begun, but not completed the grievance process prior to bringing his action.  That Court held that the exhaustion requirement is not satisfied until the administrative process has reached a final result.  The Court relied upon the record before the Court at the time the complaint was filed and noted that, since administrative review of the grievance had not been completed at the time the suit was filed, the requirements of 1997e(a) had not been met.  The complaint, therefore, was dismissed.

Another post-<u>Nussle</u> District Court case worth noting is <u>Fletcher v. Haase, et al.</u>, 2002 U.S. Dist. LEXIS 3262 (Feb. 26, 2002).  There, the United States District Court for the Southern District of New York held that the "exhaustion requirement must be met as of the time the complaint was filed."  Thereafter, in <u>Benitez v. Straley, et al.</u>, 2002 U.S. Dist. LEXIS 5277 (March 27, 2002), the United States District Court for the Southern District of New York dismissed a prisoner complaint for failure to exhaust because the prisoner failed to allege that he appealed the denial of relief in his original grievance.  <u>See</u> <u>McNeil v. United States</u>, 508 U.S. 106, 113 S.Ct. 180, 124 L.Ed.2d 21 (1993) (post-filing of administrative action does not cure a requirement of exhaustion).

A review of the record here at the time the complaint was filed, shows that plaintiff did not even allege that she exhausted her administrative remedies prior to bringing this action.  As such, this action must be dismissed in its entirety.

<u>**CONCLUSION**</u>

For the foregoing reasons, the defendants respectfully request that summary judgment enter in their favor.

DEFENDANTS
John Armstrong, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:_____/s/_____
      Madeline A. Melchionne
      Assistant Attorney General
      110 Sherman Street
      Hartford, CT  06105
      Federal Bar #ct02029
      E-Mail:  madeline.melchionne@po.state.ct.us
      Tel: (860) 808-5450
      Fax: (860) 808-5591


**<u>CERTIFICATION</u>**

I hereby certify that a copy of the foregoing was mailed to the following on this 2nd day

of August 2004:

      Jancis Fuller #239781
      York Correctional Institution
      201 West Main Street
      Niantic, CT 06357


      _____/s/_____
      Madeline A. Melchionne
      Assistant Attorney General