UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JANCIS FULLER                                    CIVIL ACTION NUMBER: 3:00CV812(RNC)(DFM)
PLAINTIFF

    VS.

JOHN ARMSTRONG, ET AL.
DEFENDANTS                                       SEPTEMBER 20, 2004

MEMORANDUM OF LAW IN SUPPORT OF OBJECTION
TO DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT

1. INTRODUCTION

The plaintiff, Jancis L. Fuller, has been illegally confined in the custody of
the Connecticut Department of Correction at 201 West Main Street, Niantic, Connecticut,
since 6-30-95, after being arrested without probable cause by Groton Town Police
Detective Walter Conley at the Groton Town Police Department, 68 Groton Long Point
Road, Groton, Connecticut, for police case #95-11878, on 6-29-95, detained overnight
there, and denied arraignment and probable cause determination procedures by Judge
Linda Munro at a hearing for the matter at G.A. 10 Court, 112 Broad Street, New London,
Connecticut, on 6-30-95. Judge Munro set an illegal $500,000.00 bond as the condition
of release from custody and the plaintiff could not post a cash bond or a 10% surety
bond to obtain release from custody during the 20-month period of oppressive pretrial
imprisonment.

The plaintiff was permitted to enter not guilty pleas to the two criminal charges
set forth in the Information, dated 7-11-95, under docket number CR10-226195, in New
London Superior Court, 70 Huntington Street, New London, Connecticut, before the trial
court, Purtill, J. presiding on 7-26-95. The two criminal charges the plaintiff entered
her pleas on were as follows: one count of 'attempted murder', C.G.S. §53a-49 and
C.G.S. §53a-54a (count one); one count of 'first degree attempted assault' (count two)
C.G.S. §53a-49 and C.G.S. §53a-59 (Docket Sheets, CR10-226195, 6-30-95 to 2-3-97,
certified copy dated 5-20-03, 4 pages, Plaintiff's Exhibit 1).

During a pretrial hearing for case CR10-226195 in New London Superior Court on
2-3-97, State's Attorney Kevin Kane presented the trial court with a substitute
information, dated 1-31-97. The substitute information listed five new criminal
charges (statute subsections added) as follows: two counts of 'attempted murder',
C.G.S. §53a-49(a)(2) and C.G.S. §53a-54a (counts one and two); two counts of 'first
degree attempted assault with a firearm', C.G.S. §53a-49(a)(2) and C.G.S. §53a-59(a)(5)
(counts three and four); one count of 'carrying a pistol or revolver without a permit',
C.G.S. §29-35(a). (Substitute Information, CR10-226195, by Kevin Kane, 1-31-97,

Plaintiff's Exhibit 2).

The trial court, Parker, J. presiding, did not give the plaintiff an opportunity to enter pleas on any of the five counts of the substitute information before or during the trial, but permitted the prosecutor to try the plaintiff on all of those charges in violation of her due process rights. After both sides rested their cases, Judge Parker gave instructions to the jury on all five counts of the substitute information and used the substantial step charge for counts one, two, three and four as required by subsection (2) of the criminal attempt statute, C.G.S. §53a-49. (Trial Transcript, CR10-226195, 2-26-97, pages 186-197, Plaintiff's Exhibit 3).

The jury convicted the plaintiff on counts three, four and five of the substitute information on 2-27-97. The convictions are invalid because the trial court did not arraign the plaintiff or give her an opportunity to enter pleas on the five counts of the substitute information before or during the trial in violation of her due process rights.

Therefore the mittimus for case CR10-226195, dated 6-4-97, is invalid because the plaintiff was not tried by the jury on the charges listed in the mittimus (defendants' Exhibit 1).

II. PROCEDURAL HISTORY

The defendants filed a motion for summary judgment in the above-captioned matter on 6-3-02. A hearing was held on the motion before the trial court, Chatigny, J. presiding, on 2-26-03. Judge Chatigny denied the motion during the hearing.

On 6-1-04, the defendants filed copies of radiographs and photographs of the plaintiff's teeth which had been taken by the defendants' expert, Dr. Jonathan Meiers at the University of Connecticut Health Center in Farmington, Connecticut, on 5-15-03. They also filed a report which the expert had prepared which contained his opinion about said examination, radiographs and photographs.

On 6-10-04, the plaintiff made an offer to the defendants in which she agreed to accept the type of amalgam filling recommended by Dr. Meiers in his report on the 5-15-03 examination, if the work to apply it was done at the University of Connecticut Health Center in Farmington, Connecticut, by Dr. Meiers, and 15,000 dollars in money damages from the defendants (Offer of Judgment, 6-7-04).

The defendants refused the offer and filed their second motion for summary judgment on 8-2-04. The same issues are being relitigated for no purpose except to vex and harass the plaintiff. The defendants have been given the opportunity to to provide the plaintiff with either a dental crown or a permananent filling for her broken tooth and have refused to provide either treatment for it. It would be

2

inappropriate and unfair to grant summary judgment to the defendants in this matter. There are numerous genuine issues of material fact in dispute and the defendants are not entitled to judgment as a matter of law.

III. ARGUMENT

A. THE PLAINTIFF'S CLAIMS AGAINST THE DEFENDANTS FOR MONEY DAMAGES IN THEIR OFFICIAL CAPACITIES ARE NOT BARRED BY THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

The plaintiff has made claims for money damages against the defendants in both their individual and official capacities in the above-entitled action (see cover page of Complaint, dated 4-7-00).

In their brief, dated 8-2-04, the defendants allege that they are immune to the claims made against them by the plaintiff for alleged actions which violated her right to adequate dental care they allegedly made during the course of their employment with the Department of Correction, pursuant to the Eleventh Amendment to the United States Constitution.

This claim is absolutely false. States and state agencies enjoy immunity from claims for money damages pursuant to the Eleventh Amendment to the United States Constitution. Therefore, a prisoner cannot obtain a judgment for money damages in a civil suit against the State of Connecticut or the Connecticut Department of Correction. However, Connecticut Department of Correction employees do not enjoy Eleventh Amendment immunity from damage suits brought by prisoners. Jacobson vs. Coughlin, 523 F.Supp. 1247-1249 (N.D.N.Y. 1981).

B. DEFENDANT HENCHY AND DEFENDANT HIGGINS HAVE BEEN PERSONALLY INVOLVED IN DEPRIVING THE PLAINTIFF OF ADEQUATE DENTAL CARE SINCE 12-2-98.

Alleging personal involvement by the defendant in an alleged constitutional deprivation caused to the plaintiff is a prerequisite to an award of money damages MacKinnon vs. Patterson, 568 F.2d 930,934 (2d Cir. 1977), cert. denied, 434 U.S. 1087 (1978). A plaintiff alleging personal involvement by the defendant in a Section 1983 action must allege a tangible connection between the acts of the defendant and the injuries suffered by the plaintiff.

In the present case, there is a tangible connection between the acts by defendant Henchy and defendant Higgins and the pain, discomfort and suffering caused to the plaintiff from being deprived of any appropriate restorative treatment for her broken maxillary left first molar.

Defendant Henchy failed to respond to a request form, dated 11-7-98, in which the plaintiff requested a dental repair for her broken tooth, after the prison's

3

dental services department received the document on or about 11-7-98 (Request Form
to Dental Services by Jancis Fuller, 11-7-98, plaintiff's Exhibit 1; Affidavit by
Jancis Fuller, 9-14-04, plaintiff's Exhibit 7).

On 11-17-98, the plaintiff repeated the request for the needed dental repair in
a grievance, dated 11-17-98, attached a copy of the request form which requested
the dental repair to the grievance, and placed the documents in the Health Services
mailbox on or about 11-17-98 (Grievance, 11-17-98, plaintiff's Exhibit 5; Affidavit
by Jancis Fuller, 9-14-04, plaintiff's Exhibit 7).

The grievance coordinator showed the grievance to Dr. Henchy shortly after she
received it and the dentist responded by having the plaintiff sent from the housing
unit she was imprisoned at to the dental services office on the morning of 12-2-98,
so he could examine her teeth (medical issue grievances are usually responded to by
the prison medical personnel within 14 days of their receipt of the grievance).

After he examined the plaintiff's teeth, he told her that the only appropriate
restorative treatment for her broken maxillary molar was a dental crown, but that
the Department of Correction did not provide dental crowns to prisoners.  The plaintiff
responded by asking Dr. Henchy if she could visit the office of a private dentist to
obtain a dental crown for the broken tooth at her own expense and he told her that
she would not be allowed to do this.  Then Dr. Henchy applied a cement filling to the
broken tooth.  The filling fell out about seven hours later (Affidavit by Jancis
Fuller, 9-14-04, plaintiff's Exhibit 7).  The plaintiff immediately wrote a complaint
about the loss of the filling and the friction and discomfort the broken tooth was
causing to her tongue to the prison's dental assistant and placed it in the Health
Services mailbox (Request Form to Dental Assistant Hutchinson by Jancis Fuller,
12-2-98, plaintiff's Exhibit 6).

Defendant Henchy deliberately did not record the examination and useless treatment
he gave the plaintiff at the prison's dental services office on 12-2-98 in her dental
record, (defendants' Exhibit 12) because he knew that he had violated her right to
adequate dental care by the following acts and omissions: (1) failing to take
radiographs of the plaintiff's teeth during the examination; (2) misinforming the
plaintiff that a dental crown was the only feasible restorative treatment which could
be applied to her broken tooth; (3) applying a useless cement filling which he knew
would fall out of the tooth within a day or two.

The grievance coordinator conferred with defendant Henchy after he committed
constitutional violations of the plaintiff's right to adequate dental care under the
Eighth Amendment to the United States Constitution, and then destroyed or concealed

the evidence which proved that she or he received a grievance, dated 11-17-98 in which the plaintiff requested a dental repair for her broken tooth, from the Health Services mailbox delivery to her office on or about 11-18-98 (defendants' Exhibit 8). The brief by the defendants, dated 8-2-04, and the affidavit by Bonnie Labreque, dated 7-24-02, do not indicate whether she was the medical grievance coordinator on or about 11-18-98.

The aforestated criminal acts committed by defendant Henchy and the grievance coordinator who processed medical grievances in November and December, 1998, were committed by these individuals upon their belief that the plaintiff would file a state habeas corpus petition in New London Superior Court or a Section 1983 action in one of the Connecticut U.S. District courts, once she learned that Dr. Henchy had no intention of repairing her broken tooth or of giving her access to an outside medical provider who was willing and capable of providing the appropriate restorative treatment for it. The plaintiff was well-known in the prison as a budding pro se litigant who had two habeas corpus petitions pending in New London Superior Court under docket numbers CV98-547350 and CV98-548650 at that time. Because Dr. Henchy and the medical grievance coordinator committed the criminal acts for purpose of obstructing justice in an official proceeding they believed was about to begin, they are both guilty of violations of C.G.S. §53a-155, 'Tampering with or fabricating physical evidence' against the plaintiff.

During her visit to the prison dental services office on 12-2-98, the plaintiff told Dr. Henchy that the broken tooth was irritating her tongue when she talked or chewed food. Dr. Henchy knew from his professional training and experience that the plaintiff was being exposed to continual discomfort and to a high risk of choking to death on food, due to being unable to grind it up into small, easy-to-swallow pieces (Affidavit by Jancis Fuller, 9-14-04, plaintiff's Exhibit 7; Affidavit by Sheila Aldrich, 6-25-04, plaintiff's Exhibit 13). Yet he failed to utilize an available administrative procedure which would have enabled the plaintiff to visit a dentist at the University of Connecticut Health Center in Farmington, Connecticut, or one with a private office in New London County, for the purpose of receiving an amalgam filling for the broken tooth, and thus obtaining relief from the problems the broken tooth was causing her (Connecticut Department of Correction's Administrative Directive, 8.4, page 2, plaintiff's Exhibit 9).

It should be obvious to any reasonable fact finder that there is a tangible connection between the acts and omissions committed by defendant Henchy with respect to the plaintiff's dental problem, and the suffering the problem has caused her.

In December, 1998, at the request of the plaintiff, her legal assistant Richard Rocco placed a telephone call to Warden Higgins office and asked the warden via her secretary if the plaintiff could have permission to visit the office of a dentist in private practice in New London County to obtain a dental crown for her broken tooth (Affidavit by Richard Rocco, 8-9-02, plaintiff's Exhibit 8).

The secretary instructed Richard Rocco to call back in about a week and get the warden's answer to the request from her. About a week later, Richard Rocco called Warden Higgins's office again and was informed at that time by the secretary that Warden Higgins did not allow prisoners to visit the offices of dentists in private practice in the community to obtain dental crowns (plaintiff's Exhibit 8).

In argument B of their brief, dated 8-2-04, the defendants claim that defendant Higgins did not hold supervisory authority over the employees of the prison's medical services and dental services departments (Affidavit by Eileen Higgins, dated 7-23-02, defendants' Exhibit 6; Affidavit by Kenneth Parker, 5-30-02, defendants' Exhibit 10). The defendants claim that defendant Higgins was the warden of York Correctional Institution from 8-96 until 5-01, and that the University of Connecticut Health Center entered into an agreement with the Department of Correction to provide medical services to Connecticut prisoners through a program called Correctional Managed Health Care Program, commencing on or about 8-11-97.

In fact, no such agreement was made between the corrections officials and the health center until August, 2001, as proven by the fact that until that time, all of the prisoners incarcerated at York Correctional Institution were still using regular request forms to make both medical and non-medical requests to prison employees (Request Form to Dr. Sirosi by Jancis Fuller, 11-30-99, plaintiff's Exhibit 10; Affidavit by Tamyra Sellers, 9-13-04, plaintiff's Exhibit 11).

During August, 2001, the guard staff assigned to work in the housing units at York Correctional Institution began distributing request forms which had the words "Correctional Managed Health Care" typed across the top of the form, to the prisoners and instructed them to use these new request forms only to make requests to mail to the medical and dental personnel at the health services unit, and the regular request forms only for mailing requests to prison administrators on personal and legal issues. (Request Form to Medical Unit Staff by Jancis Fuller, 12-10-01, plaintiff's Exhibit 12).

This evidence proves that throughout her period of employment as York Correctional Institution's warden, defendant Higgins had supervisory authority over the prison's medical personnel and dental personnel.

6

Therefore, defendant Higgins had the supervisory authority to order defendant to utilize the dental services adminstrative directive 8.4 to send the plaintiff to one of the dental experts who worked in offices outside the prison system who held contracts to provide dental services to prisoners with the Department of Correction, to receive an appropriate restorative treatment for her broken tooth, once Richard Rocco informed the warden via her secretary that Dr. Henchy had failed to take any action to fulfill that need for the plaintiff after examining her teeth on 12-2-98.

Defendant Higgins's failure to take any steps to secure a restorative dental treatment for the plaintiff at any time after she became aware of the need for it, during the remainder of her employment at the prison makes her personally involved in the defendant dentists' decisions to deprive the plaintiff of adequate dental care in violation of the Eighth Amendment to the United States Constitution.

C. THE DEFENDANTS HAVE DEMONSTRATED "DELIBERATE INDIFFERENCE" TO THE PLAINTIFF'S NEED FOR AN AMALGAM FILLING OR DENTAL CROWN RESTORATION FOR HER BROKEN TOOTH SINCE 12-2-98 IN VIOLATION OF HER CONSTITUTIONAL RIGHT TO ADEQUATE DENTAL CARE UNDER THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

In order for a Section 1983 plaintiff to prevail on an Eighth Amendment claim arising out of inadequate dental care, he must prove that one or more prison officials have demonstrated "deliberate indifference" to his serious medical need(s). "Doctors act with deliberate indifference if they know of and disregard an inmate's serious medical need." Connecticut Prisoners' Rights, Stern (1997), page 74. Hathaway vs. Coughlin, 37 F.3d 63,67,68 (2d Cir. 1994). The United States Court of Appeals for the Second Circuit has held that "dental needs--for fillings, crowns and the like--are serious medical needs as the law defines that term." Dean vs. Coughlin, 623 F.Supp. 392,404 (S.D.N.Y. 1985), vacated on other grounds, 804 F.2d 207 (2d Cir. 1986).

In the present case, defendant Henchy has known of the plaintiff's serious medical need for restorative treatment for her broken maxillary molar since 12-2-98 and has disregarded it by failing to process an off-site dental referral, which would have permitted the plaintiff to have a medical furlough to the office of a private dentist with a contract to provide dental services not available at the prison's dental office, or to any of the dentists at the University of Connecticut Health Center who have contracts with the Department of Correction to provide dental services not otherwise available to Connecticut prisoners (Connecticut Department of Correction Administrative Directive, Dental Services, 8.4. page 2, plaintiff's Exhibit 9).

Defendant Benard has known of the plaintiff's serious medical need for restorative treatment for her broken maxillary molar since 3-26-99 and has disregarded it

by failing to make the off-site dental referral described above which was and still is available to the plaintiff through Adminstrative Directive 8.4.

The defendant dentists' refusals to take steps which would have permitted the plaintiff to obtain either the dental crown restoration they recommended for her broken tooth (Affidavit by Jancis Fuller, 9-14-04, plaintiff's Exhibit 7) or the type of amalgam filling recommended by the defendants' expert Dr. Meiers in his report on his 5-15-03 examination of the plaintiff at his office in Farmington, Connecticut, and by Dr. Bruce Patterson after he examined the radiographs and photographs which depicted the plaintiff's teeth taken by Dr. Meiers on 5-15-03 (Review and Report of Dr. Bruce Patterson Concerning Jancis Fuller, 11-18-03, plaintiff's Exhibit 14) constitute deliberate indifference to her serious medical needs. Milteor vs. Beorn, 896  F.2d 559,575 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1980).

Once she was made aware that the plaintiff had a broken tooth which needed restorative treatment in December, 1998, defendant Higgins had an obligation to take steps to secure such treatment for the plaintiff. Ramos vs. Lamm, 639 F.2d 559,575 (10th Cir. 1980), cert. denied, 450 1041 (1981)("Deliberate indifference to medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment).

During her visit to the prison dental office on 12-2-98, the plaintiff complained to Dr. Henchy that her broken maxillary molar was causing her to have difficulty speaking, discomfort when speaking from the jagged edge of the broken tooth or the old filling in the tooth rubbing against the left side of her tongue, abrasions on her tongue in that area, and inability to grind up certain types of food when eating. (Affidavit by Jancis Fuller, 9-14-04, plaintiff's Exhibit 7).

The plaintiff made the same complaints to Dr. Benard when she visited the prison dental office on 3-26-99 (Affidavit by Jancis Fuller, 9-14-04, plaintiff's Exhibit 7).

The defendant dentists knew that their decisions to leave the plaintiff's broken tooth untreated would cause the plaintiff to suffer from continual pain, discomfort and incidents in which she choked on poorly chewed food while attempting to swallow it throughout the period that the tooth remained untreated (Affidavit by Jancis Fuller, 9-14-04, plaintiff's Exhibit 7; Affidavit by Sheila Aldrich, 6-25-04, plaintiff's Exhibit 13).  Therefore, these decisions constitute deliberate indifference to the plaintiff's serious medical needs on the part of the defendant dentists. Chance vs. Armstrong, 143 F.3d 698 (2d Cir. 1998).

The defendants claim in their brief, dated 8-2-04, that the plaintiff refused

an offer by defendant Benard to provide an amalgam filling for her broken tooth during her visit to the prison's dental office on 3-26-99 (Corrected Affidavit by Paul Benard, 7-23-02, defendants' Exhibit 2).

The plaintiff has denied in her pleadings and motions that any such offer was made and the Court should find the plaintiff's side of this issue more credible than the defendants' side, in light of the fact that the plaintiff recently made an offer to the defendants to settle the case and in the offer stated that she was willing to accept the bonded amalgam filling recommended by Dr. Meiers in his report on his 5-15-03 examination of the plaintiff, filed in the trial court on 6-1-04 (Offer of Judgment, 6-7-04, filed 6-10-04).

The defendants have demonstrated deliberate indifference to the plaintiff's right to adequate dental care since 12-2-98 in violation of the Eighth Amendment to the United States Constitution and this constitutes a claim upon which relief can be granted to the plaintiff by the Court.

D. THE PLAINTIFF QUALIFIES FOR A MEDICAL FURLOUGH TO THE OFFICE OF CONNECTICUT DENTIST FOR THE APPROPRIATE RESTORATIVE TREATMENT FOR HER BROKEN TOOTH UNDER CONNECTICUT GENERAL STATUTE 18-101, FURLOUGHS FOR PRISONERS.

"A prisoner has no independent constitutional right to medical care outside the institution.  However, since a prison medical care system rarely provides the complete range of medical services within their walls, the failure to obtain the necessary medical care for a prisoner from a source outside the prison may constitute deliberate indifference." Prison Legal News, May, 2003, page 3. Ellis vs. Butler, 890 F.2d 1001,1003 n1 (8th Cir. 1989)("medical condition need not be an emergency in order to be considered serious under Estelle; concellation of appointment with outside knee specialist may state deliberate indifference claim).

The restorative treatment needed by the plaintiff for her broken maxillary molar is not available to prisoners at the prison's dental services office.  The dentists who work there are not trained or properly equipped to attach the bonded amalgam filling described by Dr. Meiers and Dr. Patterson in their respective reports on their examinations of the radiographs and the photographs of the plaintiff's teeth taken on 5-15-03.

Therefore, it will be necessary for the Court to order the defendants to allow the plaintiff to have a medical furlough to Dr. Patterson's office in Waterford, Connecticut, or Dr. Meiers's office in Farmington, Connecticut, to obtain the amalgam filling restoration for her broken maxillary molar, if the plaintiff convinces the Court to find in favor of her side of the case at trial in the above-captioned matter.

Under the criteria set for in the Connecticut furlough statute, C.G.S. §18-101, the plaintiff qualifies for a medical furlough for the purpose of obtaining medical treatment from an outside medical provider because: (1) the restorative dental treatment she needs is not available at the prison's dental services office; (2) she has never been a disciplinary problem to the prison officials during the nine years she has been illegally imprisoned; (3) she has been trusted by guard personnel and sheriffs to walk around inside Connecticut courthouses without handcuffs on while appearing in them to represent herself in post-conviction cases she has prosecuted, on numerous occasions and has never attempted to escape from custody during these court appearances.

In Argument C of their brief, dated 8-2-04, the defendants point out that the plaintiff did not file an application for a medical furlough for the purpose of obtaining restorative treatment for her broken tooth from an outside medical provider prior to filing the above-entitled action.  The plaintiff did not fill out and submit a furlough application for that purpose to the defendant warden at the time the request was made in December, 1998, for her to have permission to visit the office of a dentist in private practice in New London County to obtain a dental crown for her broken tooth, because she did not know that the furlough applications which were available at the prison library/law library at that time could be used to apply for any type of furlough except a residential visit furlough.

Further, the plaintiff did submit a furlough application in which she requested permission to visit Dr. Patterson's office in Waterford, Connecticut, to obtain a dental crown for her broken tooth to Warden Richards by placing it in the warden's mailbox in the prison cafeteria on 8-14-02 (Furlough Application by Jancis Fuller, 7-20-02, plaintiff's Exhibit 15).

E. THE PLAINTIFF'S FAILURE TO SUBMIT A LEVEL 2 GRIEVANCE REGARDING HER REQUEST FOR A DENTAL REPAIR FOR HER BROKEN TOOTH TO THE GRIEVANCE COORDINATOR AFTER 30 DAYS HAD PASSED WITHOUT HER RECEIVING AN ANSWER TO HER LEVEL 1 GRIEVANCE, DATED 11-17-98, WAS THE FAULT OF DEFENDANT ARMSTRONG AND DEFENDANT HIGGINS.

As explained in Argument B of this brief, the plaintiff never received a written reply to the grievance, dated 11-17-98 and the attachment she submitted to the prison's health services department on 11-17-98 (Grievance, 11-17-98, plaintiff's Exhibit 5; Request Form to Dental Services by Jancis Fuller, 11-7-98, plaintiff's Exhibit 4). Defendant Henchy summoned her to his office in response to the grievance (without mentioning that he had seen the grievance), examined the plaintiff and denied her the relief requested in the grievance orally, but did not record this denial in the dental record kept in the plaintiff's name for that purpose.

In Argument D of their brief, dated 8-2-04, the defendants claim that the above-entitled action must be dismissed in its entirety because the plaintiff failed to file a level 2 grievance after more than 30 days had passed since she had submitted the level 1 grievance, dated 11-17-98 (plaintiff's Exhibit 5), even though she had not received a written reply to it.

However, it is defendant Armstrong's and defendant Higgins's fault that the plaintiff failed to do this, not the plaintiff's fault.  These defendants failed to provide information to all prisoners at York Correctional Institution as to what course of action, if any, could be taken to pursue an administrative remedy after a grievance submitted to the grievance coordinator or the medical grievance coordinator is not answered within 30 days or beyond.  The plaintiff read her copy of the inmate handbook including the section about grievances shortly after her illegal imprisonment commenced at York C.I. on 6-30-95, and referred to it again when she submitted the grievance, dated 11-17-98, for guidance about the grievance procedure.  The section called Inmate Summary of Grievance Procedure, does not instruct the prisoners on the course of action to take if a level 1 grievance they have submitted is not answered, and does not inform the prisoners that a complete set of the grievance directives is available at the prison library/law library (Inmate Summary of Grievance Procedure, from York C.I. handbook, 1-94, plaintiff's Exhibit 16).

The defendants' reliance on Benitez vs. Straley, et al., 2002 U.S. District LEXIS 5277 (March 27, 2002) in their brief, dated 8-2-04, to support their claim that the plaintiff's Complaint, dated 4-7-00 must be dismissed for failure to exhaust administrative remedies before filing a Section 1983 complaint in a U.S. District Court.∨ *is misplaced.* In that case, the prisoner failed to appeal the denial of relief requested in his original grievance.  This means the original grievance was returned to the prisoner with a decision on it.  In the present case, the level 1 grievance was not returned to the plaintiff by the medical grievance coordinator.

Defendant Armstrong and defendant Higgins failed to provide a filing system for grievances which would have permitted the plaintiff to obtain proof that she had submitted the grievance, dated 11-17-98, at the time she submitted it, and this has deprived the plaintiff of an opportunity to prove to the Court that she did submit the grievance at the time and place she has alleged to have done so.

Therefore, it would be unfair for the Court to dismiss the above-entitled action based on the plaintiff's failure to submit a level 2 grievance regarding her 11-7-98 request to the prison's dental services department for a repair of her broken tooth.

11

CONCLUSION

For the foregoing reasons, the plaintiff respectfully requests that the
defendants' second motion for summary judgment be denied.

THE PLAINTIFF

_Jancis L. Fuller_
Jancis L. Fuller, pro se
201 West Main Street
0-North, F-8
Niantic, CT    06357

CERTIFICATION

This is to certify that a copy of the foregoing brief and exhibits were mailed/
delivered this 21st day of September, 2004, to opposing counsel, as follows:

Madeline Melchionne
Assistant Attorney General
110 Sherman Street
Hartford, CT    06105

THE PLAINTIFF

_Jancis L. Fuller_
Jancis L. Fuller, pro se